Frank J. LAWRENCE Jr. Plaintiff

v.

Diane VAN AKEN et al Defendants

No. 4–03–CV–20.

United States District Court,
W.D. Michigan,
Southern Division.

April 6, 2004.

Frank J. Lawrence, Jr., Bloomfield Hills, MI, Pro Se.

Denise C. Barton, Thomas K. Byerley, Lansing, MI, E. Thomas McCarthy, John R. Oostema, Smith, Haughey, Rice & Roegge, PC, Grand Rapids, MI, Richard C. Kraus, Smith, Haughey, Rice & Roegge, PC., Lansing, MI, for Defendants.

## OPINION

MCKEAGUE, District Judge.

*Pro se* plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's remaining claim arises from his application for State Bar membership and defendants' alleged wrongful delay in processing plaintiff's application for State Bar membership and their violation of plaintiff's right to privacy. In bringing his claim, plaintiff sought discovery of certain information contained in the investigative

files of the Michigan Judicial Tenure Commission (JTC). The JTC, a nonparty to the suit, moved to quash the subpoena duces tecum served by plaintiff, contending that its files are privileged under state law and this privilege should be recognized by the federal courts. Following a hearing on the matter on January 12, 2004, the magistrate judge granted in part and denied in part the JTC's motion to quash the subpoena.

Presently pending before the Court is the JTC's appeal of the magistrate judge's order requiring the disclosure of the JTC's findings of fact in the investigative files. After reviewing the record, the Court finds no clear error and affirms the magistrate judge's ruling.

## I.

A brief recitation of the facts follows. Plaintiff is a graduate of a Michigan law school and has successfully passed the Michigan Bar Examination. However, as a result of a pending Bloomfield Township ordinance violation prosecution, plaintiff's application to the State Bar of Michigan was held in abeyance. Plaintiff alleges that defendant Van Aken held his application in abeyance in order to pressure him to drop a federal lawsuit challenging the Bloomfield Township prosecution. Plaintiff also contends that defendant Armbrustmacher unconstitutionally delayed plaintiff's application and improperly contacted both plaintiff's employer and Judge Avadenka (Avadenka), who was presiding over the criminal prosecution involving the ordinance violation. Plaintiff subsequently withdrew his application to the State Bar of Michigan.

According to plaintiff, Avadenka attempted to use plaintiff's state bar license as a "bargaining chip" to resolve both the ordinance violation and another proceeding filed by the plaintiff in a federal court.

More precisely, plaintiff alleges that Avadenka told plaintiff's attorney that Avadenka would procure plaintiff's bar license if he pled to the ordinance violation and dropped the federal court case. After plaintiff allegedly refused to do so, the prosecution went to trial and plaintiff was found guilty. Plaintiff alleges that Avadenka and state bar officers, specifically defendants in this case, had improper communications pertaining to his bar license application.

Subsequently, plaintiff filed a request for investigation with the JTC regarding Avadenka's alleged conduct. Plaintiff's complaint was reviewed by the JTC, but the JTC did not issue a complaint against Avadenka. Plaintiff then sought, through subpoena, access to the JTC records related to Avadenka's investigation, and any communication between Avadenka and defendants that may be contained in those records.

The JTC filed a motion to quash the subpoena, contending that its files are privileged under MICH. CT. R. 9.221 and the deliberative process privilege. The magistrate judge entered an order sustaining the JTC's assertion of the deliberative process privilege, but denying a blanket privilege as to the factual materials in the JTC records. The JTC filed this appeal.

## II.

*A. Standard of Review*

■ Under 28 U.S.C. 636(b)(1)(A), the non-dispositive determinations of a magistrate judge are reviewed by the district court for clear error. Under W.D. Mich. L. Civ. R. 72.3(a), the district court shall consider the appeal and set aside the magistrate judge's finding only if it is contrary to law or clearly erroneous. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court

on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)(*internal citations omitted* ).

## B.  Analysis

■■■ A federal court sitting by virtue of federal question jurisdiction must apply the federal rules in determining the presence or absence of a privilege. Recognition of a state law privilege does not necessarily mandate recognition of the privilege in a federal court. Under FED.R.EVID. 501, which governs privileges in cases before federal district courts:

> "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court, pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States."

*Id.* The only issue on appeal is whether the magistrate judge properly denied recognition of a general privilege created by MICH. CT. R. 9.221 covering the contents of the JTC's files.

■■ A privilege recognized by state law must be carefully examined in relation to the federal common law and against the backdrop of the liberal discovery provisions outlined in the Federal Rules of Civil Procedure. *See Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979)(stating "[e]videntiary privileges in litigation are not favored."); *see also* FED. R. CIV. P. 26(b)(providing for liberal discovery in federal actions).

■■ While a federal court is not required to extend a privilege recognized by state law, it must consider state law in determining whether the federal privilege should be extended. *See United States v. Gillock,* 445 U.S. 360, 368, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980) (stating "[i]n this regard it should be noted that, although federal law controls, the Supreme Court has indicated 'that the privilege law as developed in the states is not irrelevant' "); *see also In re Zuniga,* 714 F.2d 632, 639 (6th Cir.1983)(internal citations omitted). The court must determine whether state law recognizes the privilege asserted and, if it does, whether to apply that privilege in the federal proceedings. *See U.S. v. Brunner,* 200 F.2d 276 (6th Cir.1952).

The JTC claims that MICH. CT. R. 9.221 (the "rule") confers a blanket evidentiary privilege concerning inquiries before the JTC. The JTC relies upon the language of the rule and a long-standing policy recognizing the confidentiality of its investigative files to support the argument that this court should extend privilege over its files. The complete rule provides as follows:

RULE  9.221  CONFIDENTIALITY; DISCLOSURE

**(A) Before Complaint.** Before a complaint is filed, a member of the commission or its staff may not disclose the existence or contents of the investigation, testimony taken, or papers filed in it, but the commission may at any time make public statements as to matters pending before it on its determination by a majority vote that it is in the public interest to do so, limited to the fact that

 (1) there is an investigation pending, or

 (2) the investigation is complete and there is insufficient evidence for the commission to file a complaint.

**(B) After Filing of Complaint.** After the complaint is filed, the proceed-

ings are available for public inspection and must be conducted in open public hearings.

**(C) Consent of Judge.** On the written consent of a judge who is being investigated, the commission may disclose matters relating to the investigation, notwithstanding the prohibitions against disclosure set forth in this rule.

**(D) Disclosure to State Court** Administrator.

(1) The commission may refer to the state court administrator requests for investigation and other communications received by the commission concerning the conduct of a judge if, in the opinion of the commission, the communications are properly within the scope of the duties of the administrator. The commission may provide the administrator with files, records, investigations, and reports of the commission relating to the matter. Such a referral does not preclude action by the commission if the judge's conduct is of such a nature as to constitute grounds for action by the commission, or cannot be adequately resolved or corrected by action of the administrator.

(2) The commission may disclose to the administrator, upon request, the substance of files and records of the commission concerning a former judge who has been or may be assigned judicial duties by the administrator; a copy of the information disclosed must be furnished to the judge.

**(E) Disclosure to Attorney Grievance Commission.** Notwithstanding the prohibition against disclosure in this rule, the commission shall disclose information concerning a judge's misconduct in office, mental or physical disability, or some other ground that warrants commission action under Const 1963, art 6, § 30 to the Attorney Grievance Commission, upon request. Absent a request, the commission may make such disclosure to the Attorney Grievance Commission. In the event of a dispute concerning the release of information, the Attorney Grievance Commission may petition the Supreme Court for an order of disclosure, and the Judicial Tenure Commission may file a response.

Though the JTC acknowledges that the rule does not contain any textual references to privilege, it argues that language in the Michigan Constitution provides for privilege and confidentiality of proceedings. The relevant language in the Michigan Constitution directs the Michigan Supreme Court to implement the JTC and allows the court to provide "for confidentiality and privilege of proceedings." MICH. CONST. art. VI § 30(2). This, according to the JTC, creates a state privilege with regard to its investigative files. Additionally, the JTC points to the longstanding practice of maintaining the confidentiality of the investigative records as adequate reason for extending a privilege in this case. Each of these arguments will be considered in turn.

■ First, the Court starts with the language of the rule at issue. As noted above, the text of the rule does not contain any reference to privilege with respect to the proceedings, although it provides for the confidentiality of records at various times during the inquiry. MICH. CT. R. 9.221. For example, the investigative materials are confidential and cannot be released prior to the filing of a complaint. MICH. CT. R. 9.221(A). In the absence of any reference to privilege, this court is asked to rewrite the rule to include a privilege that is not evident under a plain reading of the text. *See Mitchell v. Chapman,* 343 F.3d 811 (6th Cir.2003) citing *Public Citizen v. United States Dept. of Justice,* 491 U.S. 440, 109 S.Ct. 2558, 105

L.Ed.2d 377 (1989)(stating "The plain meaning of the statute controls, except in rare cases where the literal interpretation of the statutory language would compel an odd result or produce a result demonstratively at odds with legislative intent."). This Court will neither rewrite the rule nor attempt to find within the rule an intention to recognize this privilege in order to extend a blanket privilege as the JTC would prefer.

■ Even if the court was to find ambiguity in the rule, the recent change in the title of the rule at issue is instructive. The rule was formerly entitled: CONFIDENTIALITY AND PRIVILEGE OF PROCEEDINGS. The rule was amended effective January 2003, and is now entitled: CONFIDENTIALITY; DISCLOSURE. While the title of a rule does not necessarily determine the meaning of its text, it offers guidance when the plain meaning of the text is unclear. "[W]e recognize that headings may not be used to limit the plain meaning of a statute or rule and generally are used as interpretive tools only when the text is ambiguous." *South Side Landfill, Inc. v. United States,* 282 F.Supp.2d 600 (W.D.Mich.2003)(citing *ASX Inv. Corp.*

*v. Newton,* 183 F.3d 1265, 1268 n. 5 (11th Cir.1999)).

Allowing for the possibility that the rule is *at most* ambiguous, the title is instructive. Removal of the word "privilege" from the title suggests the very opposite conclusion than that which the JTC asserts. While the *Staff Comment* to the change in the rule does not specifically indicate why the title of the rule was changed, it states that the chapter changes were in "response to recommendations from numerous individuals, associations and the Judicial Tenure Commission concerning Michigan's judicial discipline system." [1] According to the comment, the rule changes were partly in recognition of Article VI, Section 30 of the Michigan Constitution, the same provision upon which the JTC relied to support its argument for extending privilege.[2] In light of the fact that the only reference to privilege in the rule was recently removed, this court is unpersuaded that the Michigan Supreme Court intended to recognize a privilege with respect to the investigative materials at issue.

Where privileges have been extended, the text of a state rule normally makes explicit reference to privilege. For in-

---

1. 467 Mich. clxiv, (July 29, 2002–February 4, 2003). The full comment states:

The amendment of subchapter 9.200 of the Michigan Court Rules effective January 21, 2003, was a response to recommendations from numerous individuals, associations, and the Judicial Tenure Commission concerning Michigan's judicial discipline system. The amendments were effective immediately as to matters newly submitted to the commission pursuant to Rule 9.207. With regard to pending matters the commission was directed to apply the new provisions to the extent practicable and reasonable. *This was the first major revision of the rules governing the JTC since the original rules were adopted more than 30 years ago in response to the addition of Article 6, Section 30 of the Michigan Constitution.* The

amendments encapsulate in formal rules several unwritten practices of the commission that separate the investigative and prosecutorial functions of its staff from the commission's decision making function. Other rules strengthen the due process rights by providing respondent judges with earlier and fuller notice, and sharpen the commission's investigative tools. The purpose of this subchapter is to ensure the integrity of the courts and the judicial process in Michigan. *Id. (emphasis added ).*

2. Mich. Const. art VI § 30. **Judicial tenure commission; selection; terms; duties; power of supreme court.**(2) The supreme court shall make rules implementing this section and providing for confidentiality and privilege of proceedings. *Id.*

stance, a federal privilege was recognized with respect to a state-based psychotherapist-patient privilege by relying, in part, on the plain text of a state rule conferring such privilege. *In re Zuniga*, 714 F.2d 632 (6th Cir.1983). The court in *In re Zuniga* relied, in part, on the Michigan mental health code in extending the state based psychotherapist-patient privilege. *Id.* at 639. Unlike the rule in this case, the relevant section of the Michigan mental health code states "[p]rivileged communications shall not be disclosed in civil, criminal, legislative, or administrative cases or proceedings, or in proceedings preliminary to such cases or proceedings, unless the patient has waived the privilege, except in the circumstances set forth in this section." MICH.COMP.LAWS ANN. 330.1750. The court drew on this language to recognize a state psychotherapist-patient privilege. The rule at issue in this matter differs markedly by the complete absence of any language establishing privilege. Thus, the court is unable to find that a state-based privilege exists.

█ The JTC also relies on the longstanding policy recognizing the confidentiality of its investigative files to argue for the establishment of an evidentiary privilege for JTC investigative records. However, the JTC fails to provide, and this court was unable to find, case law to support this position. First, the JTC's reliance on *In the Matter of Mikesell,* is unavailing, given the important differences in facts between that case and this case. 396 Mich. 517, 243 N.W.2d 86 (1976).

In *Mikesell*, the court held that a judge was not entitled to discovery of his JTC investigative files after the commission made a recommendation for his removal. *Id.* at 88–89. The court reasoned that the files should remain confidential to protect the witnesses who provided information leading to the removal. *Id.* at 94.

Here, the request for discovery does not involve a judge requesting records pertaining to his own disciplinary proceedings. Moreover, here unlike in *Mikesell,* the JTC did not issue a complaint against the judge under investigation. Finally and importantly, in *Mikesell* there was no blanket privilege accorded the documents in the JTC files. In fact, the judge in *Mikesell* was provided with certain materials from the files prior to the recommendation for his removal, subject to an *in camera* review by the Master. *Id.* at 88. Thus, *Mikesell* does not support the finding of an absolute privilege where JTC files are concerned.

The JTC also relies on *In re Petition of Judicial Tenure Commission,* 649 N.W.2d 71 (Mich.2002). In that case, the court granted a motion to seal the records concerning a JTC investigation until a formal complaint against the judge was filed, pursuant to MICH.CT. R. 9.222(A). The purpose of maintaining the records in confidence was "to protect the integrity of the investigation, as well as the reputation of courts and judges involved *'until the Commission determines that formal proceedings are warranted.'* " *Id.* (*emphasis added*). Once again, this reference does not support the presence of a blanket evidentiary privilege in relation to JTC records. It only acknowledges the need for confidentiality prior to a complaint being filed, as expressed in the language of the court rule itself.

In this case, the JTC has already determined that no complaint is to be filed against Avadenka. Further, it is not the respondent judge in this case seeking discovery of the investigative materials. The cases cited by the JTC merely emphasize the importance of confidentiality, but do not establish a blanket privilege.

After careful review of the relevant rule and the case law, there is little support for the argument that a state privilege protects the investigative records of the JTC. The records are afforded a degree of confidentiality, as provided by the rule and enforced by the courts. Confidentiality is not, however, the same as privilege. "Statutory provisions providing for duties of confidentiality do not automatically imply the creation of evidentiary privileges binding on courts." *Pearson v. Miller*, 211 F.3d 57, 68 (3d Cir.2000); *see also Nilavar v. Mercy Health System - Western Ohio*, 210 F.R.D. 597 (S.D.Ohio 2002) (holding that a confidential peer-review process does not rise to the level of a federal evidentiary privilege).

Although the records are not privileged, the confidential nature of the proceedings should be protected. The release of the factual records to the plaintiff subject to a confidentiality order is appropriate under Federal Rule of Civil Procedure 26(c). The order of confidentiality imposed by the magistrate judge presents a sensible solution for allowing appropriate discovery pertaining to plaintiff's case while still protecting the confidentiality interests of the JTC.

The court is unwilling to extend a federal privilege in this matter. Accordingly, for the reasons stated by the magistrate judge in his opinion as well as the reasons stated in this opinion, the Court **AFFIRMS** the magistrate judge's denial of a blanket privilege. An order consistent with this opinion shall follow.